Annie Mary Timmons v. Commissioner.
Timmons v. Commissioner
Docket Nos. 8516, 12693.
United States Tax Court
1951 Tax Ct. Memo LEXIS 166; 10 T.C.M. (CCH) 622; T.C.M. (RIA) 51202; June 29, 1951
Annie Mary Timmons, pro se. Percy C. Young, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing and opinion, involve deficiencies in income tax and penalties as follows: Year
Deficiency
5% Penalty
50% Penalty
1941
$ 1,874.47
$93.72
1942
6,885.92
$3,442.96
1943
18,403.11
9,201.56 The respondent has determined that petitioner failed to report a substantial part of her income for each of the years 1941, 1942 and 1943. He has asserted a five per cent negligence penalty for 1941 and a fraud penalty for each of the years 1942 and 1943. The petitioner protests the determination of the deficiencies as well as the assessment of the penalties. Findings of Fact The petitioner is an individual residing at all *167 times here material at Columbia, South Carolina. She filed her income tax returns for the calendar years 1941, 1942 and 1943 with the collector of internal revenue at Columbia, South Carolina. The petitioner has a high school and college education. She worked for about ten years prior to 1939 as a waitress and as a school teacher at annual salaries ranging from $500 to $1,500. She had savings of about $1,000 by 1939. Beginning in 1939 she bagan to acquire old houses in Columbia and to remodel them into apartment houses for rental purposes, devoting her full time to converting and managing these properties. The petitioner acquired a house at 3100 Duncan Street in 1939 for $4,000, a house at 3107 Heyward Street in 1940 for $9,000, a house at 2920 Devine Street in 1941 for $8,000, and a house at 3104 Monroe Street in 1941 for $7,000. She also built a new apartment house at 208 Sims Avenue in 1941 at a cost of $20,000. The Duncan Street house was remodeled into an apartment house containing eight apartments at a cost of $13,000. The Heyward Street house was remodeled into an apartment house of eleven apartments at a cost of $18,000. The Devine Street house was remodeled into an apartment *168 house containing thirty apartments at a cost of $18,000. The Monroe Street house was remodeled into an apartment house with eight apartments at a cost of $18,000. The Sims Avenue house contained seven apartments when built. All of these apartments were owned and operated by petitioner during 1941, 1942 and 1943. The petitioner acquired her apartment houses and maintained them largely on loans obtained from local banks and finance companies. Her indebtedness to the banks and finance companies increased from about $100,000 on January 1, 1941, to about $200,000 on December 31, 1943. During the years 1941 through 1943 an acute shortage of housing existed in Columbia, due largely to the presence of large numbers of military personnel in that vicinity. As a result, petitioner worked long hours and spent substantial sums of money in the effort to prepare her apartments for rent. She was able to rent all the apartments available, in many instances renting them before the remodeling was completed. There was a large turnover of tenants in petitioner's apartments during the years involved, due to local conditions. The petitioner was often unable to ascertain who were the actual occupants *169 of her apartments and to collect all the rentals properly due her. Frequent repairs to the apartments were also made necessary, so that apartments were sometimes unavailable for occupancy for substantial periods of time while remodeling and repair work was being done. The petitioner rented most of her apartments partially furnished during 1941, 1942 and the early part of 1943. Early in 1943 she entered into contracts for the sale of all of the furnishings to a Mrs. Fugate and a Mrs. Black. Mrs. Fugate later took over Mrs. Black's interest in the furniture contracts when she was unable to pay her part of the contract price. She paid the petitioner $4,000 in cash for her, petitioner's, interest in the furnishings and assumed the outstanding obligations against them. She owned all of the furnishings after about April 1943 and rented them to petitioner's tenants on whatever basis could be arranged with them. The petitioner sometimes collected furniture rentals for Mrs. Fugate but received no part of the furniture rental on her income after April 1943. She applied the $4,000 which she received from Mrs. Fugate on her accounts at the stores from which she had purchased the furnishings *170 on credit. The petitioner maintained checking accounts in Columbia banks during the years 1941 through 1943 but carried on a substantial part of her business through cash transactions, keeping much of the cash received from rentals either in her home or on her person and paying cash for a substantial part of the materials and services used in remodeling, maintaining, and operating her apartment houses. She kept receipts and canceled checks as records of many of her transactions and made notations of rentals collected on her rental contracts at or about the time collections were made, but kept no accurate, businesslike records of her business operations. In her income tax return for 1941 the petitioner reported a net operating loss of $1,298.96. The return showed gross income of $11,000 from rentals, depreciation of $3,912.95, and other expenses of $8,386.01, including interest, electricity, water, fuel oil, taxes, repairs, and miscellaneous expenses. The respondent increased the amount of gross rentals received to $17,550 and decreased the allowable deductions to $6,225.94, determining that the petitioner realized a net income of $11,324.06 in 1941. He also asserted a five per *171 cent penalty for negligence. The petitioner's gross income in 1941 from all of her apartments, including the rentals from furnishings, amounted to $17,550. * Her business expenses for 1941, including repairs, heating, electricity, janitor services, interest, and other items, amounted to $8,816.84. Her total deductions for the year, including the above amount of business expenses, taxes of $800, depreciation of $2,400, and charitable contributions of $78, amounted to $12,094.84. Her net taxable income for 1941 was $5,455.16. Respondent has conceded that in 1941, as well as in 1942 and 1943, petitioner was the sole support of her dependent mother and is entitled to a personal exemption as head of a family. In her income tax return for 1942 petitioner reported a net income of $939.05. The return showed gross income from rentals of $26,180, and deductions of $14,900 for depreciation, $1,200 for repairs, and $9,140.95 for other business expenses. Respondent has allowed all of those deductions and in addition thereto has allowed a deduction of $78 for contributions to charities but has added $19,846.49 *172 to petitioner's rental income, thereby increasing net income to $20,707.54. In her income tax return for the year 1943 petitioner reported a net income of $1,863.20 after deductions of depreciation $9,566.66, repairs $6,885, and other business expenses of $11,335.14. Respondent has allowed the deductions claimed and in addition thereto has allowed a contribution to charities of $117 but has added $36,457.28 to rental income, thereby increasing petitioner's net income to $38,203.48. Petitioner had a gross income from rentals of $40,000 in 1942 and her net taxable income for that year was $14,681.05. She had a gross income of $36,000 and a net taxable income of $8,096.20 in 1943. The respondent has asserted a 50 per cent penalty under the provisions of section 293 (b), Internal Revenue Code, for each of the years 1942 and 1943, and has also denied to petitioner the benefits of the forgiveness feature of the Current Tax Payment Act of 1943 on the ground that she filed false and fraudulent returns for 1942 and 1943, with willful intent to evade taxes. When the respondent's agents called upon petitioner in January 1945 for the purpose of investigating her *173 tax liability for the years here involved, she refused to produce records of her business operations for these years and denied having such records. On later occasions she persistently refused to produce records of her business activities for these years when asked for information by the revenue agents. Throughout the entire course of the respondent's investigation of the petitioner's tax liability she refused to co-operate with the respondent's agents. The agents finally reconstructed her income by investigating the records of banks, business suppliers, utility companies, and Office of Price Administration, and by interviewing petitioner's tenants. The petitioner's tax returns for 1941, 1942, and 1943 were filed on March 13, 1942, on March 15, 1943, and on March 15, 1944, respectively. The respondent's notice of deficiency for 1941 was mailed by registered mail March 12, 1945, within three years of the date the income tax return for 1941 was due to be filed. The notice of deficiency for the years 1942 and 1943 was mailed by registered mail on September 13, 1946, within three years of March 15, 1944, when the returns for 1942 and 1943 were due to be filed pursuant to the provisions *174 of the Current Tax Payment Act of 1943. Opinion LEMIRE, Judge: The petitioner first contends that the deficiencies asserted by the respondent for each of the years 1941, 1942, and 1943 are barred by the statute of limitations. These contentions are without merit. Although the petitioner argued that she did not recive the notice for 1941 until after March 15, 1945, she produced no evidence to show that the notice was mailed any later than March 12, 1945, the date it bears upon its face, which date is within three years of March 15, 1942, the date the return was filed. The petitioner's return for 1942 was filed on March 15, 1943, and her return for 1943 was filed on March 15, 1944. Under the provisions of the Current Tax Payment Act of 1943 both returns were due to be filed March 15, 1944. The respondent's deficiency notice was mailed September 13, 1946. The deficiency notices were mailed within three years from the date the returns were due to be filed, pursuant to the provisions of section 275, Internal Revenue Code. We therefore hold that the deficiencies for 1941, 1942, and 1943 are not barred by the statute of limitations. The principal issues to be *175 determined here are (1) whether respondent correctly reconstructed the amount of petitioner's gross income from rentals in each of the years 1941, 1942, and 1943; (2) whether respondent correctly determined the amount of allowable deductions for business expenses in 1941; (3) whether respondent correctly asserted a negligence penalty in connection with the petitioner's 1941 tax return, and (4) whether respondent correctly asserted a fraud penalty in connection with the petitioner's tax returns for 1942 and 1943. The voluminous record in these proceedings contains a great deal of both oral and documentary evidence of little or no value to this Court in determining the issues before us. Respondent's agents, having been denied any appreciable assistance by the petitioner in investigating her rental income and expenses for the years 1941 through 1943, laboriously reconstructed her income and expenses as best they could by investigating all sources of information available to them in the vicinity of Columbia. The amounts of income and expenses thus determined were admittedly only approximations and in some instances were purely speculative in nature. On the other hand, the fragmentary *176 records in the form of receipts, canceled checks, contracts, bills, and memoranda produced by the petitioner to explain her income and expenses for these years revealed many inconsistencies and errors and were in many instances unintelligible. We have considered all of the evidence before us and have made the closest approximations we can of the amounts of rental income received by petitioner in 1941, 1942, and 1943, and of the deductible expenses incurred by the petitioner in 1941. The expenses deducted by the petitioner for 1942 and 1943 were allowed in full by the respondent and are not in issue here. It should be noted that the concessions made at the hearing by the respondent of certain expenses for 1941 have been most helpful. Our findings of fact as to income as well as expenses have been made by giving the broadest possible scope to the rationale of Cohan v. Commissioner, 39 Fed. (2d) 540. Further discussion of the many factors taken into consideration in making these findings of fact would serve no useful purpose here. The petitioner's tax return for 1941 contained inaccuracies both as to the income and the expenses reported. She testified that John S. McCravy, *177 a deputy collector of internal revenue, assisted her in preparing the returns and was responsible for most of the inaccuracies therein. However, his signature appears on the return only as the officer who administered the oath to the petitioner and not as the person who prepared the return. Even if we are to believe that McCrary did actually aid petitioner in preparing the return, it would not relieve petitioner of the responsibility for the statements therein contained as to items of gross income and deductions. Estate of Louis L. Briden, 11 T.C. 1095, affd., 179 Fed. (2d) 619. After considering all the evidence we conclude that the numerous inaccuracies in petitioner's returns were due in large part to petitioner's neglect in failing to keep adequate records of her income and expenses, from which she might have prepared accurate returns. The respondent's assertion of the five per cent negligence penalty for 1941 is sustained. Cf. Watson-Moore Co., 30 B.T.A. 1197. While the circumstances relating to the petitioner's tax liability for 1942 and 1943 strongly suggest that the petitioner willfully filed false and fraudulent tax returns for *178 these years to evade taxes, we conclude, after examination of all the evidence, that the respondent has failed to sustain his burden of proving the existence of fraud by clear and convincing proof. The respondent argues that the presence of fraud is shown by the facts that the petitioner greatly understated her taxable income for both years; that she failed to maintain records from which the amount of her income might have been determined; that she refused to produce what records she had or to cooperate in the investigation of her tax liability; and that she handled a substantial part of her business transactions in cash. He also charges, and there is some evidence to kupport it, that the petitioner conspired with Mrs. Fugate to conceal certain income for 1943 through a fictitious sale of the furnishings in her apartments. However, both by her own testimony and that of others, and by documentary evidence, the petitioner has to some extent refuted that charge. While there is no question in our minds but that petitioner's taxable income for 1942 and 1943 was grossly understated that fact alone does not prove the existence of fraud. There is not in the evidence of record convincing *179 proof that petitioner willfully concealed income or claimed false deductions with the intent of evading taxes. We conclude that respondent has proved only that the petitioner was grossly negligent in keeping her accounts and in reporting her income for 1942 and 1943. We therefore held that respondent erred in imposing the fraud penalty for 1942 and 1943 and in denying to petitioner the benefits of the forgiveness feature of the Current Tax Payment Act of 1943. Decision will be entered under Rule 50. Footnotes
*. This sentence corrected pursuant to Tax Court order dated October 24, 1951.↩